UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIET DIETRICH,<br><br>　　　　　　　　Plaintiff,<br><br>　-*against*-<br><br>CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES SPECIAL OFFICER CHARLES PARKER, Shield No. 327, and SPECIAL OFFICER JOHN DOES #1-3,<br><br>　　　　　　　　Defendants. | 19 CV<br><br>**COMPLAINT**<br><br>Plaintiff Demands Trial by Jury |

Juliet Dietrich, by and through her attorneys, Emery Celli Brinckerhoff & Abady LLP, for her Complaint alleges as follows:

### INTRODUCTION

1. On August 6, 2018 Juliet Dietrich—a disabled, 68-year-old former corrections officer—was trying to leave a parking spot in downtown Brooklyn when New York City Department of Citywide Administrative Services Special Officer Charles Parker pulled her from her car and arrested her over a perceived parking violation.

2. Ms. Dietrich's permit for her disability allowed her to use spaces designated for "any governmental agency." Nonetheless, Special Officer Parker was angry that Ms. Dietrich was occupying a parking spot reserved for those associated with the Brooklyn Borough President Eric L. Adams. Apparently, an able-bodied member of the Borough President's administration had demanded that her car be moved. Special Officer Parker reached into the car, grabbed Ms. Dietrich by the arm and yanked her from the vehicle onto the street. Special Officer Parker then arrested Ms. Dietrich on false charges. Ms. Dietrich had no record. But because of the

1

defendants, she was held in custody for more than twelve hours and then forced to fight false charges against her for nine months.

3. This case is about the abuse of power. The uniformed defendants violently assaulted a vulnerable, disabled and innocent senior citizen on the doorstep of Brooklyn's Borough Hall. Ms. Dietrich brings this civil rights action seeking damages for defendants' violations of her rights, privileges, and immunities under the United States Constitution, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 and New York State common law.

**PARTIES**

4. Plaintiff Juliet Dietrich is a citizen of the United States and at all relevant times was a resident of the County of Kings, State of New York.

5. Defendant City of New York ("the City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, the City, acting through the Department of Citywide Administrative Services ("DCAS"), was responsible for the policy, practice, supervision, implementation, and conduct of all DCAS matters and was responsible for the appointment, training, supervision, and conduct of all DCAS personnel. In addition, at all relevant times, the City was responsible for enforcing the rules of the DCAS, and for ensuring that DCAS personnel obey the laws of the United States and of the State of New York.

6. Defendant Special Officer Charles Parker, Shield No. 327, is a member of the DCAS law enforcement branch, E97 Command. Special Officer Parker is a Special Officer of New York City, under New York State Criminal Procedure law, chapter subdivision 27, §2.10 [40], which gives him limited powers of a New York State peace officer. At all times relevant hereto, defendant Parker was acting within the scope of his employment.

7. At all times relevant hereto, defendants Special Officers John Does #1-3 were members of the DCAS law enforcement branch, E97 Command. John Does #1-3 are Special Officers of New York City, under New York State Criminal Procedure law, chapter subdivision 27, §2.10 [40], which gives them limited powers of New York State peace officers. At all times relevant hereto, defendants Special Officers John Does #1-3 were acting within the scope of their employment.

8. At all times relevant hereto, defendants Special Officer Charles Parker and Special Officer John Does #1-3 (collectively "the Individual Defendants") were acting under the color of state law.

## JURISDICTION AND VENUE

9. This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988 and New York state common law.

10. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a), and the doctrine of pendent jurisdiction.

11. The acts complained of occurred in the Eastern District of New York, and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

12. On November 5, 2018, a written amended notice of claim was served upon defendants by personal delivery of the notice, in duplicate, to the Comptroller's office at 1 Centre Street, New York, New York.

13. At least thirty days have elapsed since the service of the amended notice of claim, and adjustment or payment of the claim has been neglected or refused.

14. This action has been commenced within one year and ninety days after the happening of the event upon which the claim is based.

## JURY DEMAND

15. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

16. Ms. Dietrich is now 69 years old. She is a grandmother. She is a retired civil servant with twenty-five years' experience as a corrections officer for the City of New York. She is disabled.

17. For twenty-five years, Ms. Dietrich worked as a corrections officer at the Bedford Hills Correctional Facility and the Bayview Correctional Facility. Her work left her with lasting damage to her knee and hip from which she still has trouble walking.

18. After her knee-replacement surgery, Ms. Dietrich obtained a special parking permit.

19. Ms. Dietrich's parking permit is valid for "On-Street Parking & Metered Municipal Parking Lots in New York City." The permit allows her to park in "any space designated for use by Authorized Vehicles, including Diplomats (DPL), New York Press (NYP) or any governmental agency, except spaces designated for Ambulances and Ambulettes."

20. Ms. Dietrich prominently displays the blue placard of her special parking permit in the front of her dash board and a second sign hanging from her mirror.

21. On the morning of August 6, 2018, at approximately 9:30 a.m., Ms. Dietrich was sitting in her beige 2017 Ford Explorer near 209 Joralemon Street in Brooklyn, New York. The space was marked with a sign that stated as follows:

> \* Authorized Vehicles Only
> Borough President
> Monday - Friday
> 8am - 6pm

4

22. Ms. Dietrich knew she had a right to be there because her special parking permit allowed her to park in a space designated for a governmental agency, like the Borough President. She needed to park in that space so that she could visit the nearby governmental office to renew her notary stamp.

23. Ms. Dietrich's special permit parking placard was on the dash board. Her blue special permit was hanging from the rear-view mirror.

24. After coming back from her errand, Ms. Dietrich turned the car on and began to leave the parking spot. Her telephone rang. She moved her car back into the space and then answered the telephone. She placed the car in park and left the ignition on while she continued her phone call.

25. As Ms. Dietrich spoke on the phone, a man approached her car and knocked on the window. The person who knocked on Ms. Dietrich's door was David W. Johnson—a staff member of the Brooklyn Borough President, Eric L. Adams. Mr. Johnson is listed as working in the Office of the Senior Advisor to the Brooklyn Borough President. The Senior Advisor to Borough President is Stefan Ringel. According to the Brooklyn Borough website, "The Senior Advisor to the Borough President serves at the behest of the Brooklyn Borough President, providing expertise, guidance, and confidential counsel at the highest level in a primary support role. In the absence of the Borough President, the Senior Advisor serves as his designee."

26. Mr. Johnson gestured to Ms. Dietrich to leave her parking spot.

27. Ms. Dietrich held up her hand to indicate that she would leave in five minutes. Mr. Johnson appeared to leave.

28. Moments later, Special Officer Parker approached Ms. Dietrich's car. Special Officer Parker asked Ms. Dietrich to roll down her window. She complied. Special Officer

Parker asked Ms. Dietrich to leave her parking spot. She told him that she was leaving but needed to write down a phone number. Special Officer Parker appeared satisfied with this explanation and seemed to leave.

29. Ms. Dietrich then put her car into drive and put on her signal.

30. At the same time, Special Officer Parker again approached the car. As he walked, he turned to Mr. Johnson, who was still nearby, and told him not to worry about it, because he would take care of it.

31. Before Ms. Dietrich could leave, Special Officer Parker told Ms. Dietrich not to move her car and that he was going to write her a ticket.

32. Ms. Dietrich complied with his instruction; she reversed the car and turned off the ignition.

33. Special Officer Parker appeared not to have any tickets in his book. He instructed Ms. Dietrich to wait in her car. He also told her—incongruously—to turn off the vehicle, although it was already turned off. While the engine made sounds as it cooled, the engine was off.

34. Special Officer Parker then took photographs of the vehicle's registration through the window and the license plate.

35. Special Officer Parker then grew angry and turned to Ms. Dietrich and stated: "Didn't I tell you to turn it off?"

36. Special Officer Parker then reached into Ms. Dietrich's car and tried to turn off the car. Ms. Dietrich explained that the car was already off.

37. Special Officer Parker responded by opening the car door and pulling Ms. Dietrich out of the car.

38. After Special Officer Parker pulled her out of the car, Ms. Dietrich fell to the ground in the street.

39. Special Officer Parker pulled her to her feet, but she slipped again.

40. Special Officer John Doe #1—who had failed to intervene to stop Special Officer Parker—then helped Special Officer Parker pull Ms. Dietrich up to standing.

41. Ms. Dietrich asked for her cane to help her stand. Special Officer Parker refused. He handcuffed her behind her back instead.

42. When Ms. Dietrich asked to place the handcuffs in her front because the rear-cuffs where hurting her shoulder, Special Officer Parker refused her request, again.

43. Special Officer Parker and Special Officer John Doe #1 then marched Ms. Dietrich into 210 Joralemon Street.

44. Once inside, Special Officer John Doe #2 began asking Ms. Dietrich a series of questions as Special Officers Parker, John Doe #1 and John Doe #3 looked on. Special Officer John Doe #2 asked Ms. Dietrich why she did not leave. Ms. Dietrich explained that she had a permit to be in the parking spot. Special Offer John Doe #2 told her that Special Officer Parker would write her a ticket.

45. Ms. Dietrich began to cry out of fear, stress and embarrassment. She told the Individual Defendants that what they were doing was wrong and she intended to make a complaint about their behavior.

46. Special Officer Parker then told Ms. Dietrich that—instead of a ticket—he had decided to arrest her.

47. The Individual Defendants then arrested Ms. Dietrich and took her to the 84th Precinct at 301 Gold St., Brooklyn, New York.

48. Ms. Dietrich was then taken to 120 Schermerhorn St., Brooklyn, New York for booking. She was then processed and then left in a cell to await arraignment.

49. Special Officer Parker swore out a statement that falsely accused Ms. Dietrich of improper stopping, standing or parking and obstructing governmental administration.

50. Ms. Dietrich was not released until after 11:00 p.m. that night—more than twelve hours after she had tried to leave her parking spot.

51. After months of appearances, the criminal charges against Ms. Dietrich were dismissed on April 29, 2019; her file was immediately sealed.

52. Ms. Dietrich's case is over; her ordeal is not. Defendants' arrest and subsequent mistreatment of Ms. Dietrich have caused her lasting physical and emotional pain.

**FIRST CAUSE OF ACTION**
42 U.S.C. § 1983
(Against All Defendants)

53. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

54. By the above, and by arresting and imprisoning Ms. Dietrich without probable cause, using excessive force, assaulting her, unreasonably seizing and searching her, retaliating against her for threatening to complain about their bad conduct, falsely imprisoning her, falsifying an account of the events surrounding the arrest and assault of Ms. Dietrich upon which a criminal complaint was based, making false statements under oath in the criminal court complaint against Ms. Dietrich, and failing to take steps to intercede and protect Ms. Dietrich from the above, the Individual Defendants deprived Ms. Dietrich of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §

1983, including, but not limited to, rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution.

55. In addition, the Individual Defendants conspired among themselves to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983 and by the First, Fourth and Fourteenth Amendments to the United States Constitution and took numerous overt steps in furtherance of such conspiracy, as set forth above.

56. Defendants acted under pretense and color of state law and in their individual and official capacities and/or within the scope of their respective employments as DCAS officers. Said acts by the Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth and Fourteenth Amendments to the United States Constitution.

57. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained damages including physical and emotional pain and suffering.

**SECOND CAUSE OF ACTION**
Assault and Battery
(Against Special Officers Parker, John Doe #1, and the City of New York)

58. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

59. Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously assaulted Plaintiff in that they had the real or apparent ability to cause imminent harmful and/or offensive bodily contact and intentionally did violent and/or menacing acts which threatened such contact to Plaintiff, and that such act(s) caused apprehension of such contact in Plaintiff.

60. Defendants, acting within the scope of their employment, intentionally, willfully, and maliciously battered Plaintiff when they, in a hostile and/or offensive manner, struck and seized Plaintiff without her consent, and with the intention of causing harmful and/or offensive bodily contact to Plaintiff.

61. The City, as the employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

62. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**THIRD CAUSE OF ACTION**
False Arrest and False Imprisonment
(Against All Defendants)

63. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

64. By the actions described above, the Individual Defendants falsely arrested, falsely imprisoned and detained Ms. Dietrich without reasonable or probable cause, illegally and without a warrant, and without any right or authority to do so. The acts and conduct of defendants were the direct and proximate cause of injury and damage to Ms. Dietrich and violated her common law rights guaranteed to them by the laws of the State of New York.

65. The City, as the employer of each of the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

66. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Negligence
(Against Special Officers Parker, John Doe #1, and the City of New York)

67. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

68. The Individual Defendants owed a duty of care to Plaintiff.

69. Special Officers Parker and John Doe #1 breached that duty of care by unreasonably searching Plaintiff, pulling her from her car and injuring her with unreasonable force.

70. As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

71. All of the foregoing occurred without any fault or provocation by Plaintiff.

72. The City, as the employer of the Individual Defendants, is responsible for their wrongdoing under the doctrine of respondent superior.

## FIFTH CAUSE OF ACTION
Negligent Hiring, Training, Discipline, and Retention of
Employment Services
(Against the City of New York)

73. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

74. The City, through the DCAS, owed a duty of care to Plaintiff to prevent the physical and mental abuse sustained by her. Under the same or similar circumstances, a reasonable, prudent, and careful person would have anticipated that an injury to Plaintiff or to those in a like situation would probably result from this conduct.

75. Upon information and belief, the Individual Defendants were unfit and incompetent for their positions as police officers and/or security guards.

76. Upon information and belief, the City knew or should have known through the exercise of reasonable diligence that the Individual Defendants were dangerous.

77. Upon information and belief, the City's negligence in hiring, training, disciplining, and retaining the Individual Defendants proximately caused Plaintiff's lasting physical, mental, emotional and professional injuries.

78. Upon information and belief, because of the City's negligent hiring, training, discipline, and retention of the Individual Defendants, Plaintiff incurred significant physical and mental injuries.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a. Compensatory damages in an amount to be determined at trial;

b. Punitive damages;

c. Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

d. Such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 5, 2019

EMERY CELLI BRINCKERHOFF
& ABADY LLP

By: _____
O. Andrew F. Wilson (OW 50962)
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

*Attorneys for Plaintiff Juliet Dietrich*